UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DWAYNE GRANT, et al.,

    Plaintiffs,

v.

    Case No. 1:22-cv-186

UNITED STATES OF AMERICA, et al.,

    Hon. Hala Y. Jarbou

    Defendants.
_____/

## **OPINION**

Plaintiffs are residents of the City of Benton Harbor, Michigan. They brought this action based on harm they allegedly suffered from the presence of lead in the City's water system. Plaintiffs sue "federal, state, and local agencies and officials, as well as several companies." (R&R 1, ECF No. 162.) The Court referred the case to Magistrate Judge Phillip J. Green. (10/20/2022 Order, ECF No. 58.) Defendants filed motions to dismiss the complaint. (*See* ECF Nos. 85, 88, 91, 92, 95, 97, 98, 102, 128.) On June 1, 2023, Magistrate Judge Green entered a report and recommendation ("R&R") which recommends that the Court grant some of the motions, deny others, and dismiss Plaintiffs' claims. Before the Court are Plaintiffs' objections to the R&R (ECF No. 163). For the reasons herein, the Court will overrule the objections and adopt the R&R.

### **I. STANDARD**

Under Rule 72 of the Federal Rules of Civil Procedure,

> the district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions.

Fed. R. Civ. P. 72(b)(3).

## II. ANALYSIS

Much of Plaintiffs' response to the R&R consists of disconnected arguments that seem to ignore the R&R altogether. Many arguments concern issues that are not addressed in the R&R, like qualified immunity. Thus, for the most part, it is difficult to discern what objections Plaintiffs are making to the R&R or why they believe the R&R is incorrect. Nevertheless, the Court will endeavor to address those objections that the Court can discern.

### A. Public Buildings Exception to Governmental Immunity

Plaintiffs note that Michigan's Governmental Tort Liability Act provides immunity to government officials unless one of several exceptions applies. Plaintiffs argue that one such exception applies to negligence in connection with the maintenance and repair of public buildings. *See* Mich. Comp. Laws § 691.1406. However, that argument does not identify any error in the R&R. The magistrate judge did not discuss such a negligence claim. Instead, he recommended that the Court decline to exercise supplemental jurisdiction over all of Plaintiffs' state-law claims. Thus, Plaintiffs' objection is irrelevant.

### B. Adequate Notice under SDWA

Plaintiffs argue that their complaint alleges that the city and state defendants failed to provide adequate notice under the Safe Drinking Water Act (SDWA), 42 U.S.C. § 300g-6. They also argue that their complaint alleges that the federal defendants failed to monitor compliance with that notice provision, as required by 42 U.S.C. §§ 300g-6, 300g-7. However, the magistrate judge noted that Plaintiffs do not allege an ongoing violation of the SDWA, which only permits injunctive relief. (R&R 82.) Thus, Plaintiffs would not be entitled to any relief for a past violation of the notice provision. In addition, Plaintiffs conceded that they failed to comply with the 60-day notice requirement in the SDWA. (*Id.* at 83.) Consequently, even if Defendants failed to comply

with the SDWA, Plaintiffs do not state a viable claim under that statute. Plaintiffs identify no error in those conclusions.

### C. Personal Jurisdiction over Defendants Regan and Shore

The magistrate judge concluded that Plaintiffs' allegations failed to make a *prima facie* showing of personal jurisdiction over the EPA administrators, Michael Regan and Debra Shore, in their individual capacities. (R&R 33-39.) Plaintiffs assert that the Court has general jurisdiction over these defendants because they have a duty to enforce laws in this jurisdiction; however, Plaintiffs provide no legal support for this assertion. The Court agrees with the reasoning of the magistrate judge that an official's general duty to enforce laws that apply to a forum state does not suffice to give a court in that state general personal jurisdiction over an individual. *See Hill v. Pugh*, 75 F. App'x 715, 719 (10th Cir. 2003) ("It is not reasonable to suggest that federal prison officials may be hauled into court simply because they have regional and national supervisory responsibilities over facilities within a forum state.").

Plaintiffs also contend that the Court has specific personal jurisdiction over Defendants Regan and Shore because they "directed agents into the State of Michigan to begin a process that should have been initiated months or years prior under the law." (Pls.' Objs., PageID.3059.) However, Plaintiffs' amended complaint contains no such allegations. Thus, the magistrate judge correctly concluded that "[t]here is nothing in the amended complaint to suggest that either EPA administrator 'purposely' availed himself or herself personally of the privilege of acting in Michigan." (R&R 37.) Plaintiffs made a similar statement in their response to the motion to dismiss, but the magistrate judge rightly dismissed that statement as "conclusory." (*Id.* at 38.) Also, the statement is too vague to put these defendants on notice of the basis for Plaintiffs' claim. Accordingly, Plaintiffs failed to establish personal jurisdiction over the EPA administrators.

Plaintiffs also rely on Rule 4(k)(2) of the Federal Rules of Civil Procedure, but that rule only applies where "the defendant is not subject to jurisdiction in any state's courts of general jurisdiction" and "exercising jurisdiction is consistent with the United States Constitution and laws." Fed. R. Civ. P. 4(k)(2). Plaintiffs do not address the first requirement in their briefing. Nor do they adequately explain how the exercise of personal jurisdiction would satisfy the requirements of due process, which requires purposeful availment by Defendants of the privilege of acting or causing a consequence in the forum state. *See S. Mach. Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir. 1968) (explaining due process requirements for personal jurisdiction). Accordingly, the Court agrees with the magistrate judge that Plaintiffs have not made the showing necessary to establish personal jurisdiction over Defendants Regan and Shore in their individual capacities.

### D. Jurisdiction over City and State Defendants

Plaintiffs apparently argue that the Court has personal and subject matter jurisdiction over the state and city defendants due to Michigan's Governmental Tort Liability Act. The Court cannot discern the relevance of this argument because the magistrate judge never concluded that the Court lacks subject matter or personal jurisdiction over these particular defendants. Instead, the magistrate judge recommends that the Court decline to exercise *supplemental* jurisdiction over all of Plaintiffs' claims arising under state law.

### E. Sovereign Immunity

The magistrate judge rejected arguments by the state agencies, state officials, the City, and city officials that they are entitled to sovereign immunity. (R&R 44, 72.) However, the magistrate judge concluded that the United States and the EPA are entitled to sovereign immunity for Plaintiff's tort claims arising under state law. (*Id.* at 23-31.) The magistrate judge found no need to address whether the city or state defendants were entitled to qualified immunity. (*Id.* at 62, 73.)

4

### 1. City & State Defendants

Plaintiffs argue that the city and state officials are not entitled to sovereign immunity under the Eleventh Amendment when sued in their individual capacities. That may be so, but it has no bearing on any issue discussed in the R&R. The magistrate judge did not find that any city or state defendants were entitled to immunity.

### 2. Jury Issue

Plaintiffs argue that the concept of sovereign immunity is a "legal fiction" and that the issue should be one for a jury to decide. (Pls.' Resp. 20.) The Court disagrees. *See United States v. Mitchell*, 445 U.S. 535, 538 (1980) ("It is elementary that '[t]he United States, as sovereign, is immune from suit save as it consents to be sued[.]'" (quoting *United States v. Sherwood*, 312 U.S. 584, 586 (1941)). The R&R explains why the United States and the EPA enjoy sovereign immunity from Plaintiffs' tort claims. (R&R 23-31.) There is no need for a jury to decide that issue because immunity is clear from the face of Plaintiffs' complaint. *See Parks v. Reans*, 510 F. App'x 414, 415 (6th Cir. 2013) (affirming dismissal of complaint based on sovereign immunity where immunity was "clear from the face of the complaint").

### 3. Tucker Act

Plaintiffs assert that the Tucker Act, 28 U.S.C. § 1491(a), waives sovereign immunity for the federal defendants. That act provides that

> [t]he United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.

28 U.S.C. § 1491(a)(1). But as the Supreme Court has explained,

> The Tucker Act . . . does not create substantive rights. A plaintiff relying on the Tucker Act must premise her damages action on other sources of law, like statutes or contracts. For that reason, [n]ot every claim invoking the Constitution, a federal

5

> statute, or a regulation is cognizable under the Tucker Act.  Nor will every failure to perform an obligation . . . creat[e] a right to monetary relief against the Government.

*Maine Cmty. Health Options v. United States*, 140 S. Ct. 1308, 1327 (2020) (citations and quotation marks omitted).  "To determine whether a statutory claim falls within the Tucker Act's immunity waiver," the statute must "fairly be interpreted as mandating compensation by the Federal Government for the damage sustained."  *Id.* at 1328 (quoting *United States v. White Mountain Apache Tribe*, 537 U.S. 465, 472 (2003)).

Here, Plaintiffs rely on the SDWA as the statutory basis for their claim, but that statute does not provide for a private right of action for damages.  *See Waid v. Busch*, 740 F. App'x 94, 95 (6th Cir. 2018).  As such, it cannot fairly be interpreted as mandating compensation by the federal government.

Plaintiffs also rely on their constitutional rights as a basis for damages. However, the commission of a constitutional tort does not waive the federal government's sovereign immunity under the Tucker Act.  *Nuclear Transp. & Storage, Inc. v. United States*, 890 F.2d 1348, 1352 (6th Cir. 1989).  Thus, the Tucker Act does not aid Plaintiffs.

### 4. Little Tucker Act

Plaintiffs also cite the "Little Tucker Act," 28 U.S.C. § 1346(a)(2), which provides concurrent jurisdiction in federal district courts and the United States Court of Federal Claims to hear constitutional claims against the United States so long as they do not exceed "$10,000 in amount[.]" *Id.*  Plaintiffs' claims do not fall within that limitation.  Although Plaintiffs urge the Court to not read the $10,000 amount "literally," they provide no authority for that reading.  Plaintiffs also contend that the $10,000 limitation only applies to contract claims, but the statute does not read that way.  It provides for concurrent jurisdiction over claims for the recovery of internal revenue taxes erroneously collected, as well as

6

> [a]ny other civil action or claim against the United States, not exceeding $10,000 in amount, founded either upon the Constitution, or any Act of Congress, or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort, except that the district courts shall not have jurisdiction of any civil action or claim against the United States founded upon any express or implied contract with the United States or for liquidated or unliquidated damages in cases not sounding in tort which are subject to sections 7104(b)(1) and 7107(a)(1) of title 41.

28 U.S.C § 1346(a)(2). Under a plain reading of the statute, the $10,000 limitation applies to all claims that fall within the Little Tucker Act, including those "founded either upon the Constitution, or any Act of Congress . . . ." *See id.*

### 5. FTCA

Plaintiffs also cite the Federal Tort Claims Act, 28 U.S.C. § 1346(b), but the magistrate judge examined that statute when determining that sovereign immunity applies. Plaintiffs identify no error in that analysis.

### 6. Treaty Obligations

Plaintiffs argue that the United States Senate's ratification of the "Convention on the Prevention and Punishment of the Crime of Genocide," and its ratification of the "International Convention on the Elimination of All Forms of Racial Discrimination" precludes Defendants from asserting sovereign immunity. (Pls.' Objs., PageID.3100.) Plaintiffs fail to explain how either of those documents has waived the United States' sovereign immunity. Plaintiffs do not identify a private right of action against the United States under those conventions, let alone a waiver of sovereign immunity. It is not the Court's responsibility to make Plaintiffs' arguments for them.

## F. Qualified Immunity

Plaintiffs raise various arguments for why the Court should find that Defendants are not entitled to qualified immunity. Those arguments are misdirected because the magistrate judge did

7

not reach any conclusion about qualified immunity. Like the magistrate judge, the Court sees no need to address the issue because Plaintiffs' claims are subject to dismissal for other reasons.

### G. Other Federal Laws

In passing, Plaintiffs cite Section 504 of the Rehabilitation Act (RA), 29 U.S.C. § 794, Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 et seq., and Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d et seq., as potential support for claims that would not be barred by sovereign immunity. However, Plaintiffs do not explain how any of these statutes apply to their claims. Plaintiffs argue that "they were denied funding to remediate the public water system due to being a predominantly Black American municipality," which is a "racial discrimination issue at heart [that is] at least partially controlled by the Civil Rights Act of 1964 and the Constitution." (Pls.' Objs., PageID.3082.) However, nowhere in Plaintiffs' complaint do they allege that they were denied funding to remediate their public water system. Moreover, none of the foregoing statutes addresses an alleged discriminatory denial of funding for a public water system, let alone a denial based on race or religion.

For instance, Section 504 of the RA prohibits discrimination against *disabled* individuals in programs receiving federal financial assistance. 29 U.S.C. § 794(a). Title IX prohibits discrimination on the basis of *sex* in educational programs receiving federal financial assistance. 20 U.S.C. § 1681(a). Title VI prohibits racial discrimination in programs or activities receiving federal financial assistance. *See* 42 U.S.C. § 2000d. Of these statutes, only Title VI prohibits discrimination on the basis of race. But Plaintiffs' complaint does not allege that the public water system in Benton Harbor is a program or activity receiving federal financial assistance. Nor does it allege that Plaintiffs were denied access to that system. Thus, the foregoing statutes do not apply.

Later in their objections, Plaintiffs argue that Defendants' actions "implicate" the Magnuson-Moss Warranty Act (MMWA), 15 U.S.C. § 2304, and the Consumer Product Safety

Act (CPSA), 15 U.S.C. § 2064(b). (Pls.' Objs., PageID.3096.) However, Plaintiffs provide no basis for asserting a claim under these statutes, and their complaint alleges no facts that would put Defendants on notice of such a claim. Indeed, Plaintiffs have not sued the "warrantor" of a "consumer product" within the meaning of the MMWA. *See* 15 U.S.C. § 2301(1), (5) (defining "consumer product" as "tangible personal property which is distributed in commerce" and defining "warrantor" as a "supplier or other person who gives or offers to give a written warranty or who . . . may be obligated under an implied warranty"). Similarly, Plaintiffs do not contend that Defendants have failed to comply with a consumer product safety rule, as discussed in 15 U.S.C. § 2064(b).

Plaintiffs also mention some reporting requirements in the Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA), 42 U.S.C. § 9601 et seq.; however, Plaintiffs have not alleged that Defendants failed to comply with any such requirements.

In short, Plaintiffs' perfunctory reference to additional federal statutes does not save their complaint from dismissal.

### H. Substantive Due Process

Plaintiffs claim that the individual city and state defendants are liable for failing to give warnings about the presence of lead in the water supply and for failing to remediate that condition. Plaintiffs argue that such failures amount to a deprivation of their right to substantive due process. However, Plaintiffs do not grapple with the magistrate judge's reasoning that their complaint fails to state a constitutional claim because (1) Plaintiffs fail to allege facts that identify the personal involvement of each of these individual defendants and (2) the facts alleged do not meet the "shocks the conscience" standard for a substantive due process claim. (R&R 65-71, 73-76.) Plaintiffs assert that whether Defendants' conduct meets this standard is a question for the jury to

decide. That argument puts the cart before the horse. Plaintiffs must allege a viable claim before proceeding to trial. As to their substantive due process claim, they have not done so.

### I. Private Entity Defendants

Plaintiffs object to the magistrate judge's conclusion that Plaintiffs do not state a claim against the private entity defendants under 42 U.S.C. § 1983. The magistrate judge reasoned that Plaintiffs' allegations do not establish (1) that these defendants are state actors, which is a necessary element of a claim under § 1983, or (2) that these defendants did anything that would qualify as a constitutional violation.

In their objections, Plaintiffs argue that the private entity defendants are state actors because they "assumed the functions of the State of Michigan when they signed contracts designed to remediate toxic chemicals in the public water system and to manage the state-owned public water works properties." (Pl.'s Objs., PageID.3086.) Plaintiffs also contend that these defendants "failed to complete a corrosive leaching study prior to introducing egregious amounts of chemical concoctions into the Benton Harbor Water supply[.]" (*Id.*) However, Plaintiffs' complaint alleges only that the City contracted the private entities to "assist in the maintenance and management of the water plant, as well as [provide] consulting and guidance directed towards achieving compliance with state and federal water regulations; namely, [by conducting] a mandatory follow-up study[.]" (Am. Compl. ¶ 30, ECF No. 75.) The complaint also alleges that they "failed to meet the study deadline [and failed] to attain an effective corrosive control admixture within a reasonable time." (*Id.*) In other words, Plaintiffs do not allege that the private entities introduced "chemical concoctions" into Benton Harbor's water supply.

To the extent the private entities provided advice and assistance to the City, Plaintiffs do not explain how such conduct could be "fairly attributable to the state." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982). "Acts of . . . private contractors do not become acts of the

10

government by reason of their significant or even total engagement in performing public contracts." *Rendell-Baker v. Kohn*, 457 U.S. 830, 841 (1982).  There must be "'pervasive entwinement' between the two entities surpassing that of a mere contractual relationship." *Partin v. Davis*, 675 F. App'x 575, 587 (6th Cir. 2017) (quoting *McCarthy v. Middle Tenn. Elec. Membership Corp.*, 466 F.3d 399, 412 (6th Cir. 2006)).  Plaintiffs do not allege facts supporting anything more than a contractual relationship between the City and the private entity defendants. Accordingly, the Court agrees with the magistrate judge that Plaintiffs do not state a claim under § 1983 against the private entities.  In addition, the Court agrees that Plaintiffs' allegations do not identify any unconstitutional conduct by the private entity defendants.

### J. Res Ipsa Loquitur

Plaintiffs apparently argue that the Court should allow their constitutional claims to proceed under a theory of *res ipsa loquitor* because the factual basis for their claims against each of the Defendants is hard to identify.  But that theory applies to negligence claims, not constitutional ones.  *Clark-Murphy v. Foreback*, 439 F.3d 280, 286 (6th Cir. 2006).  Negligent conduct does not give rise to a constitutional claim.  *Daniels v. Williams*, 464 U.S. 327, 333 (1986).

Moreover, Plaintiffs cannot use *res ipsa loquitor* as an excuse to avoid the requirements for pleading viable constitutional claims.  They cannot simply assert that one or more defendants is responsible for a violation of their constitutional rights.  Instead, they must allege, "with particularity, facts that demonstrate what each defendant did to violate the asserted constitutional right." *Kollaritsch v. Mich. State Univ. Bd. of Trs.*, 944 F.3d 613, 626 (6th Cir. 2019) (quoting *Cahoo v. SAS Analytics Inc.*, 912 F.3d 887, 897 (6th Cir. 2019)); *see Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) (requiring a plaintiff to "plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution").  Because Plaintiffs' complaint does meet those requirements, they cannot "unlock the doors of discovery" in an attempt

to flesh out the factual basis for their claims. *See Iqbal*, 556 U.S. at 679. "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.*

### K. Free Exercise Claims

Plaintiffs claim that Defendants' failure to warn them about lead in the Benton Harbor water supply violated their First Amendment right to the free exercise of their respective religions. The magistrate concluded that Plaintiffs lacked standing to assert such a claim because the complaint does not allege any facts about Plaintiffs' own religious beliefs and practices. (R&R 46.)

In their objections, Plaintiffs refer to their complaint, which alleges that "Abrahamic faiths . . . dominate [in their] class community," and that safe water is essential to the practice of "nearly all religions." (*See* Am. Compl. ¶ 135.) Those allegations are not sufficient. What may be true of Plaintiffs' larger community is irrelevant. It does not shed any light on Plaintiffs themselves. Consequently, as the magistrate judge explained, Plaintiffs have not alleged that they were impacted "in a personal and individual way." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 n.1 (1992). Put another way, even accepting Plaintiffs' well-pleaded allegations of fact as true, they have alleged no more than the "mere possibility" of a burden on the practice of their religions. *See Iqbal*, 556 U.S. at 679 ("[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint fails to state a claim.).

Furthermore, Plaintiffs do not address the magistrate judge's alternative reasoning that, even if they possessed standing, Plaintiffs failed to state a First Amendment claim because they do not contend that Defendants treated them differently from anyone else. The tainted water supply impacted everyone using it, without regard to religion. "The Free Exercise Clause . . . does not entitle a religious organization to special benefits." *Prater v. City of Burnside*, 289 F.3d 417, 428 (6th Cir. 2002). Likewise, to the extent Plaintiffs practice a particular religion, the First

12

Amendment does not entitle them to special treatment with regard to the safety of the City's water supply. Thus, even if the magistrate judge made an error with regard to standing, the outcome would be the same. Plaintiffs' First Amendment claim would be dismissed.

### L. Governor Whitmer

The magistrate judge concluded that Plaintiffs failed to state a claim against Governor Whitmer. Plaintiffs argue that Defendant Whitmer is not entitled to immunity, but that argument is irrelevant because the R&R does not address that question.

Plaintiffs further argue that they state a substantive due process claim against Whitmer because she "knowingly us[ed] symptoms of children she allowed to be poisoned as a pretext to close down their learning institutions[.]" (Pls.' Objs., PageID.3093.) The Court cannot discern the factual basis for this conclusory assertion or its relevance to any constitutional claim.

The crux of Plaintiffs' claim against Whitmer is that she allegedly failed to take action to address the lead-tainted water supply in Benton Harbor. The Court agrees with the magistrate judge that such facts do not state a substantive due process claim against Whitmer because "the Due Process Clause is a limitation only on government action," not government inaction. *See Guertin v. Michigan*, 912 F.3d 907, 930 (6th Cir. 2019) (holding that an official's failure to "protect and notify the public" of problems with the City of Flint's water supply was not conscience-shocking conduct and did not state a substantive due process claim).

### M. Supplemental Jurisdiction

The magistrate judge recommends declining to exercise supplemental jurisdiction over Plaintiffs' state-law claims. Plaintiffs argue that the Court should exercise supplemental jurisdiction because the state-law claims are founded on the same facts as the federal claims. The Court declines to do so. "Generally, once a federal court has dismissed a plaintiff's federal claim,

13

it should not reach state law claims." *Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 521 (6th Cir. 2007). The Court will follow that general rule here.

### N. Standard of Review

Finally, Plaintiffs argue that the magistrate judge applied the wrong standards of review for dismissals under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. Plaintiffs contend that their complaint can survive a Rule 12(b)(1) challenge by "showing any arguable basis in law for the claim made." *See Musson Theatrical, Inc. v. Federal Express Corp.*, 89 F.3d 1244, 1248 (6th Cir. 1996). And Plaintiffs contend that their complaint can survive dismissal under Rule 12(b)(6) unless it "appear[s] beyond doubt that [they] would not be able to recover under any set of facts that could be presented consistent with the allegations of the complaint." *See Bower v. Federal Express Corp.*, 96 F.3d 200, 203 (6th Cir. 1996).

As for the Rule 12(b)(1) standard, the magistrate judge concluded that the Court lacks subject matter jurisdiction over claims against the United States and the EPA because those defendants are subject to sovereign immunity. Plaintiffs do not explain how the standard in *Musson Theatrical* would change that result.

As for Rule 12(b)(6), Plaintiffs rely on the wrong standard. The "any set of facts" standard articulated in *Bower* derives from *Conley v. Gibson*, 355 U.S. 41 (1957), in which the Supreme Court stated that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id.* at 46. The Supreme Court retired that standard in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), describing it as "an incomplete, negative gloss on an accepted pleading standard[.]" *Id.* at 563. Here, the magistrate judge recited and applied the proper standard from *Twombly*, which requires a complaint to plead "enough facts to state a claim to relief that is

14

plausible on its face." *Id.* at 570.  Thus, Plaintiffs' arguments about the proper standard are not persuasive.

### III. CONCLUSION

In summary, on de novo review, the Court agrees with the analysis and disposition recommended in the R&R.  The Court is not persuaded that there is any error in that analysis.  Accordingly, the Court will adopt the R&R.

The Court will enter an order and judgment in accordance with this Opinion.

Dated: September 28, 2023                    /s/ Hala Y. Jarbou
                                             HALA Y. JARBOU
                                             CHIEF UNITED STATES DISTRICT JUDGE