UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DWAYNE GRANT, et al.,

    Plaintiffs,

v.

UNITED STATES OF AMERICA, et al.,

    Defendants.
_____/

Case No. 1:22-cv-186

Hon. Hala Y. Jarbou

## OPINION

Plaintiffs brought this action based on harm they allegedly suffered from the presence of lead in the City of Benton Harbor's water system. Defendants filed motions to dismiss the complaint and the magistrate judge recommended that the Court grant those motions. The Court adopted that report and recommendation ("R&R") and dismissed the case on September 28, 2023. Before the Court is Plaintiffs' motion for relief from judgment (ECF No. 177) and a motion by Defendant F&V Resource Management Inc. ("FV") for attorney's fees and costs (ECF No. 174). The Court will deny Plaintiffs' motion and grant FV's motion in part.

### I. RELIEF FROM JUDGMENT

Rule 59(e) of the Federal Rules of Civil Procedure permits a party to ask the Court to alter or amend its judgment within 28 days of entry of that judgment. Generally, such a motion may be granted if there is a clear error of law, newly discovered evidence, an intervening change in controlling law, or a need to prevent manifest injustice. *ACLU v. McCreary Cnty.*, 607 F.3d 439, 450 (6th Cir. 2010).

> The Rule gives a district court the chance to rectify its own mistakes in the period immediately following its decision. In keeping with that corrective function, federal courts generally have used Rule 59(e) only to reconsider matters properly

> encompassed in a decision on the merits. In particular, courts will not address new arguments or evidence that the moving party could have raised before the decision issued. The motion is therefore tightly tied to the underlying judgment.

*Banister v. Davis*, 140 S. Ct. 1698, 1703 (2020) (internal citations and quotations marks omitted).

First, Plaintiffs argue that the Court erred in rejecting their contention that they failed to state a claim under the Magnuson-Moss Warranty Act (MMWA) or the Consumer Product Safety Act (CPSA). The Court discerns no error in that conclusion. Plaintiffs apparently raised these statutes as a basis for their claims for the first time in their objections to the R&R. The Court cannot find any reference to them elsewhere in the record, which is not surprising given that the complaint contains no mention of warranties or CPSA rules. Although Plaintiffs now contend that the water they received is a consumer product and that Defendants somehow attached a warranty to it, Plaintiffs cannot possibly expect Defendants or the Court to scour the law to determine what theories or claims Plaintiffs could raise on the facts alleged without any hint from Plaintiffs either in the complaint or in their responses to the motion to dismiss that these legal claims were at issue. Defendants sought dismissal of all claims in the complaint. In their responses, Plaintiffs did not mention that they were pursuing claims under the MMWA or the CPSA. Had they done so, Defendants could have responded to that argument and the magistrate judge could have ruled on it. Plaintiffs' objections were not the proper place to raise those arguments for the first time. *See Murr v. United States*, 200 F.3d 895, 902 (6th Cir. 2000) ("[A]bsent compelling reasons, [the Magistrate Judge Act] does not allow parties to raise at the district court stage new arguments or issues that were not presented to the magistrate.").

At any rate, as the Court discussed in its opinion, Plaintiffs do not state a claim under either statute. A claim under the MMWA requires the plaintiff to allege, among other things, (1) the existence of a warranty on a consumer product distributed in commerce, (2) nonconformance with the warranty, and (3) the seller's failure to cure defects after given a reasonable opportunity to do

so. *Kuns v. Ford Motor Co.*, 543 F. App'x 572, 576 (6th Cir. 2013).  Plaintiffs have not alleged any of the foregoing.  There is no mention of a warranty, express or implied, anywhere in the complaint.  Also, the Court is not persuaded that municipal water is a consumer product distributed in commerce.  Plaintiffs' reliance on *Reiter v. Sonotone Corp.*, 442 U.S. 330 (1979) and *Sporhase v. Nebraska*, 458 US. 941 (1982) is unavailing as neither of those decisions discusses or interprets the MMWA.

The CPSA permits a cause of action by a person who sustains injury "by reason of any knowing (including willful) violation of a consumer product safety rule, or any other rule or order issued by the Commission[.]"  15 U.S.C. § 2072.  Plaintiffs do not allege a violation of a consumer product safety rule; the complaint does not identify such a rule.

Next, Plaintiffs contend that the Court improperly construed their unjust enrichment claim to be a claim arising under state law.  But that construal is consistent with Plaintiffs' complaint. (*See* Am. Compl. 63, ECF No. 75 ("For any state that recognizes the cause of action, the typical elements of a state-law claim for unjust enrichment are . . . .").)  They cannot fault the Court for following their construction.  Plaintiffs argue that this claim arises under 42 U.S.C. § 1983, but they offer no authority recognizing such a claim under § 1983.  Indeed, claims under § 1983 can only be brought for "deprivations of rights secured by the Constitution and laws of the United States."  *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982).  An unjust enrichment claim is based on state law.  Section 1983 does not provide redress for a violation of a state law.  *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995).

Plaintiffs also rely on 42 U.S.C. § 1981, which Plaintiffs have never raised as a basis for their claims until now.  They waived this argument by not raising it to the magistrate judge in the first instance.  Furthermore, Plaintiffs do not state a claim under § 1981.  "Section 1981 offers

3

relief when racial discrimination blocks the creation of a contractual relationship, as well as when racial discrimination impairs an existing contractual relationship." *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 476 (2006). Plaintiffs have not alleged that racial discrimination blocked or impaired a contractual relationship.

Next, Plaintiffs critique the magistrate judge for comparing their case to the Flint water case, even though Plaintiffs did the same in their complaint. (*See* Am. Compl. 31, 38 (citing *Guertin v. Michigan*, 912 F.3d 907 (6th Cir. 2019) and alleging that "Plaintiffs . . . are analogous to city residents in the In re Flint Water Cases").) Regardless, the Court cannot discern any error in the disposition of their claims. Plaintiffs apparently contend that their case is different from that one because Plaintiffs rely upon contractual rights (or implied contractual rights) between them and the providers of their water. But those rights are not asserted in the complaint. And in any case, those rights do not impact the resolution of Plaintiffs' federal claims. Contractual rights derive from state law. The Court declined to exercise supplemental jurisdiction over all of Plaintiff's state law claims. Thus, claims based on contractual rights, if any, were properly dismissed.

Plaintiffs also argue that state and federal laws violate the Constitution to the extent they allow for the sale of water that is not fit for consumption. They are mistaken. There is no constitutional right to safe drinking water, and Plaintiffs' disagreement with those laws does not give rise to a claim against Defendants.

As they did in their objections to the R&R, Plaintiffs assert that Michigan state law provides exceptions for governmental immunity. But those exceptions do not apply to Plaintiffs' federal claims, or to any issues addressed by the Court. Plaintiffs again misinterpret the Court's rulings, believing that it held that the state and city defendants are entitled to immunity, even

4

though the Court has repeatedly said otherwise.  Plaintiffs apparently urge the Court to create its own remedy to address the "implied warranty breaches and product liability injuries" Plaintiffs have suffered, but the Court declines to do so.  (*See* Pls.' Mot. 18, ECF No. 177.)

Plaintiffs also argue that the Court should reopen the case due to newly discovered evidence, including (1) an inspector general report detailing failures by the EPA to comply with its own policies and to protect Plaintiffs, and (2) a coded email that Governor Whitmer received purportedly detailing the "dangerous nature of continuing to sell water in Benton Harbor, as it was out of compliance."  (Pls.' Mot. 19.)  However, Plaintiffs do not explain how this new evidence would support any of their claims.  The inspector general report is not helpful because the EPA is immune from suit for Plaintiffs' claims, and its employees' failure to act generally does not give rise to a federal claim against them.  The email to Governor Whitmer simply indicates that she may have been aware of Benton Harbor's problems, which does not give rise to a federal claim against her.[1]  The email does not, as Plaintiffs contend, support viable conspiracy claims against Defendants.

Plaintiffs also rely on the Tucker Act, arguing that it abrogates sovereign immunity.  They did not raise this argument to the magistrate judge, thereby waiving it.  And as discussed in the Court's previous opinion, the Little Tucker Act does not apply to claims over $10,000, like the ones at issue here.  (*See* 9/28/2023 Op. 6-7, ECF No. 171.)  Moreover, the Big Tucker Act assigns jurisdiction to the Court of Federal Claims.  *United States v. Bormes*, 568 U.S. 6, 10 n.2 (2012).  Thus, it does not apply here.

---

[1] According to the news article provided by Plaintiffs (ECF No. 177-3), that email became public when filed in *Braziel v. Whitmer*, No. 1:21-cv-960 (W.D. Mich.), another case where residents of Benton Harbor brought suit for the lead in their water.  The email did not save the claims against Whitmer in that case.

In short, Plaintiffs have not demonstrated that they are entitled to relief from judgment. Accordingly, the Court will deny their motion.

## II. ATTORNEY FEES & COSTS

Defendant FV seeks an award of attorney fees and costs under 42 U.S.C. § 1988 and 28 U.S.C. § 1927.  Plaintiffs have not responded to FV's motion.

### A. Section 1988

Section 1988 permits the Court, "in its discretion," to award reasonable attorney's fees to the "prevailing party" in an action under 42 U.S.C. § 1983.  42 U.S.C. § 1988(b).  Plaintiffs sued FV under § 1983 for allegedly violating Plaintiffs' rights to equal protection, substantive due process, and the free exercise of their religion.  (Am. Compl. 30, 36, 68.)  The Court dismissed these claims for failure to state a claim.[2]

Section 1988 permits an award for a prevailing defendant "upon a finding [by the district court] that the plaintiff's action was frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith." *Kidis v. Reid*, 976 F.3d 708, 721-22 (6th Cir. 2020) (quoting *Mich. Flyer LLC v. Wayne Cnty. Airport Auth.*, 860 F.3d 425, 433 (6th Cir. 2017)).  "Prevailing § 1983 defendants face a higher bar than their prevailing plaintiff counterparts."  *Id.* at 722. Awarding attorney fees against a losing civil rights plaintiff is an "extreme sanction" that is typically warranted only in "truly egregious cases of misconduct." *Id.* (quoting *Sagan v. Sumner Cnty. Bd. of Educ.*, 501 F. App'x 537, 541 (6th Cir. 2012)).  The Court must be careful not to "'engage in *post hoc* reasoning' that an unsuccessful plaintiff's decision to pursue the 'action must have been unreasonable or without foundation.'"  *Id.* (quoting *Wayne v. Vill. of Sebring*, 36 F.3d 517, 530 (6th Cir. 1994)).

---

[2] Plaintiffs also failed to state a viable claim against FV for violation of the Safe Drinking Water Act (SDWA), but the Court will not discuss that claim because FV's motion focuses on Plaintiffs' claims under § 1983.

6

Here, Plaintiffs alleged that Benton Harbor contracted with FV in 2018 (after high lead levels were discovered in the city's municipal water) to assist with the maintenance and management of a water plan, to provide advice and guidance regarding compliance with state and federal regulations, and to conduct a follow-up study. Plaintiffs also alleged that FV did not implement an effective corrosion control treatment to the city's water within a reasonable period of time.

The Court concluded that Plaintiffs failed to allege facts from which to infer that FV was a "state actor" subject to suit under § 1983, and that Plaintiffs failed to state equal protection, free exercise, and substantive due process claims against any defendant. The Court then declined to exercise supplemental jurisdiction over Plaintiffs' claims arising under state law.

Plaintiffs' equal protection and free exercise claims were plainly meritless and lacking in foundation. As to their free exercise claim, Plaintiffs failed to allege any facts about their individual circumstances, such as their religious beliefs or practices and any hindrance to those practices. They relied instead on a general assertion that "Abrahamic faiths dominate this Plaintiff class community" and that clean water is necessary for certain religious practices. (Am. Compl. 69.) Regarding their equal protection claim, Plaintiffs did not allege facts from which to infer that any defendant, let alone FV, had intentionally discriminated against them because of their race through their involvement in the supply of water to an entire municipality. Such claims were patently unreasonable, yet Plaintiffs attempted to buttress their equal protection claim by making the unfounded contention that Defendants practiced a "eugenics-based racial animus and discrimination against 'Black-American' communities." (*Id.* at 73.)

Plaintiffs' substantive due process claim was also frivolous, especially against FV. In their complaint, Plaintiffs cited *Guertin*, which provided the relevant standard for their substantive due

7

process claim. Had they examined that decision, they would have known that (1) there is no constitutional right to safe drinking water as they contended in their complaint (*see* Am. Compl. 31-33, 71-72), (2) they needed to do more than allege a failure by Defendants to adequately address the lead-contaminated water in Benton Harbor, and (3) the right to substantive due process protects against conduct *by the government*, not conduct by private parties like FV. Their allegations missed the mark in all of these areas.

Nevertheless, considering the extreme nature of a sanction that shifts attorney's fees to civil rights plaintiffs, the Court concludes that this sanction is not warranted here because Plaintiffs' conduct does not rise to the level of truly egregious misconduct.

**B. Sanctions**

FV also relies upon 28 U.S.C. § 1927, which permits the Court to "award sanctions against an attorney who 'multiplies the proceedings in any case unreasonably and vexatiously.'" *King v. Whitmer*, 71 F.4th 511, 530 (6th Cir. 2023). "'The purpose' of imposing sanctions under § 1927 'is to deter dilatory litigation practices and to punish aggressive tactics that far exceed zealous advocacy.'" *FemHealth USA, Inc. v. Williams*, 83 F.4th 551, 559 (6th Cir. 2023) (quoting *Red Carpet Studios Div. of Source Advantage, Ltd. v. Sater*, 465 F.3d 642, 646 (6th Cir. 2006)). It "imposes an objective standard of conduct and does not require a finding of bad faith[.]" *FemHealth USA*, 83 F.4th at 559. "'[T]here must be some conduct' that 'falls short of the obligations owed by a member of the bar to the court *and which, as a result, causes additional expense to the opposing party*.'" *Id.* at 560-61 (quoting *Ridder v. City of Springfield*, 109 F.3d 288, 298 (6th Cir. 1997) (emphasis in original)). For instance, it permits sanctions "'when an attorney knows or reasonably should know that a claim pursued is frivolous' and yet continues to litigate it." *King*, 71 F.4th at 530 (quoting *Waeschle v. Dragovic*, 687 F.3d 292, 296 (6th Cir. 2012)).

8

Here, Plaintiffs' counsel filed a rambling, poorly-organized, and confusing 85-page complaint that relied heavily on broad, conclusory statements about Defendants collectively, rather than specific facts about what each Defendant did to violate Plaintiffs' constitutional rights. As the magistrate judge observed in his R&R, "Plaintiffs expended little effort to provide 'a short and plain statement of the claim[s] showing that [Plaintiffs are] entitled to relief." (R&R 2, ECF No. 162.) All Defendants then filed motions to dismiss the complaint.

In their motions, Defendants made clear that Plaintiffs had not alleged facts plausibly suggesting that Defendants had discriminated against Plaintiffs because of race, hindered Plaintiffs' right to the free exercise of their religions, or deprived them of their right to substantive due process. Moreover, as FV explained in its motion, to state a claim against it under § 1983, Plaintiffs needed to allege facts from which to infer that the FV was a state actor. (FV's Br. in Supp. of Mot. to Dismiss 8-12, ECF No. 86.) Citing *Simescu v. Emmet County Department of Social Services*, 942 F.2d 372 (6th Cir. 1991), and *Rendell-Baker v. Kohn*, 457 U.S. 830 (1982), FV pointed out that performing a services contract for a state entity generally does not suffice to make a private entity a state actor.

Despite the obvious flaws in Plaintiffs' complaint as described in Defendants' motions, Plaintiffs' counsel doubled down on frivolous legal arguments and factual assertions. For instance, when responding to FV's motion to dismiss the equal protection claim, counsel reiterated Plaintiffs' baseless contention that FV was involved in "eugenics-based animus and discrimination against 'Black-American' communities" when performing its contract. (Pls.' Resp. to FV's Mot. to Dismiss 8, ECF No. 113.)

In response to FV's argument that its contract with the city was not sufficient to deem it a state actor under § 1983, Plaintiffs' counsel relied on *Simescu*, which clearly undermines

9

Plaintiffs' argument. *See Simescu*, 942 F.2d at 375 ("The mere existence of a contract between a governmental agency and a private party is insufficient to create state action."). To make matters worse, counsel misquoted *Simescu*, contending it states that a contract for services "directly related to any legal obligation of the state" would make private parties liable as state actors under § 1983. (Pls.' Resp. to FV's Mot. to Dismiss 2.)  That statement is not in *Simescu*, and no other court opinion makes such a contention so far as the Court is aware.[3]  Nevertheless, counsel relied almost entirely on this false representation to support his argument that § 1983 applied to FV; he did not attempt to meaningfully grapple with any of the different legal tests for when private conduct can amount to state action.  (*See id.* at 3 ("Because the movants contracted to address a State legal duty, there is no need to analyze their relationships with other Defendants and this Court should proceed to discovery.").)  And he did not address the principle found in *Simescu* itself that a private party's performance of a contract with a state actor generally does not suffice to give rise to a claim against that private party under § 1983.

In the R&R, the magistrate judge rejected Plaintiffs' arguments that FV was a state actor, citing *Rendell-Baker*, 457 U.S. at 841 ("Acts of [] private contractors do not become acts of the government by reason of their significant or even total engagement in performing public contracts."), and noting that Plaintiffs failed to articulate a valid basis for concluding that FV was subject to suit under § 1983.  However, Plaintiffs' counsel persisted.

In Plaintiffs' objections to the R&R, counsel again relied upon the non-existent quote from *Simescu*. (Pls.' Objs. 40, ECF No. 163.)  He also made many arguments that were not relevant to any issue decided by the magistrate judge.  In fact, he spent little time addressing any of the

---

[3] The quoted phrase is found only in *Wolotsky v. Huhn*, 960 F.2d 1331 (6th Cir. 1992), which held that a defendant was *not* a state actor because its "personnel decisions were not directly related to any legal obligation of the state." *Id.* at 1337.  That holding is far afield from Plaintiffs' argument that one who contracts to perform a state's legal obligation is a state actor.

reasoning in the R&R, opting instead to make conclusory and irrelevant statements like the following:

> Plaintiffs assert that the Private Contractor Defendants assumed the role of the State, were working on the parameters set by the State, and the State was responsible for their conduct. Nevertheless, if the Court concludes that these Private Contractor Defendants are not state actors, then they are third-party actors who enacted violence upon this Plaintiff Class by exposing them to unknown concoctions of chemicals designed to stop lead leaching in pipes. These Defendants participated in the State Created Danger caused by their co-defendants' failures to act out their non-discretionary duties for several years[.]
>
> . . .
>
> Plaintiffs assert that the remediation and maintenance of the public water works building in Benton Harbor Michigan was an exclusive duty of the State under "public buildings" exception to governmental immunity . . . .

(*See id.* at 39-41.) These objections were irrelevant because Plaintiffs' complaint did not allege that FV exposed Plaintiffs to "unknown concoctions of chemicals" in their municipal water, let alone that Plaintiffs suffered harm from such conduct. Furthermore, a state law exception to governmental immunity could not possibly make FV a state actor. Meritless objections like these added unnecessary expense to the litigation of Plaintiffs' frivolous civil rights claims against FV, which filed a response to the objections.

On the whole, counsel's conduct fell well below the obligations owed by a member of the bar to the Court. He should have known at the outset that the federal claims against FV, as pled, were frivolous and unfounded. He did not have a reasonable basis for pursuing those claims through multiple stages of this case. By doing so, he added to FV's expense. Accordingly, the Court will sanction Plaintiffs' counsel by awarding FV its reasonable costs and attorney's fees for responding to Plaintiffs' civil rights claims. The Court will direct FV to submit evidence of such fees and costs within fourteen days.

11

## III. CONCLUSION

For the reasons discussed, the Court will deny Plaintiffs' motion to alter or amend judgment and grant FV's motion for attorney's fees and costs under 28 U.S.C. § 1927. The Court will enter an order in accordance with this Opinion.

Dated: March 27, 2024          /s/ Hala Y. Jarbou
                               HALA Y. JARBOU
                               CHIEF UNITED STATES DISTRICT JUDGE